IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:14-CR-0017(3) |
| | § | |
| MARIO CASTILLO | § | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANT'S MOTION TO DISMISS**

Came for consideration the motion to dismiss filed by defendant MARIO CASTILLO on April 18, 2014. Upon consideration of the motion, along with the brief in support, the government's response, the defendant's reply, and the arguments presented by counsel, the Magistrate Judge is of the opinion defendant's motion to dismiss should be DENIED.

I.
BACKGROUND

Defendant is charged with conspiring to operate an illegal gambling business in violation of 18 U.S.C. § 1955 and conspiring to launder the proceeds of that business. Title 18 U.S.C. § 1955 makes it a violation of federal law to operate an "illegal gambling business." An "illegal gambling business" is defined as a gambling business that is operating in violation of state law, involving five or more people, and that has remained in substantially continuous operation for a period in excess of 30 days or has gross revenue of $2,000 in any single day. Defendant contends Congress exceeded its authority under the Commerce Clause in enacting the statute, and, therefore, the statute is unconstitutional. Defendant also contends the statute violates Texas's right to define gambling policy within its borders.

II.
COMMERCE CLAUSE

It is a fundamental principle of constitutional law that federal courts are courts of limited jurisdiction and that federal criminal jurisdiction is limited to cases arising under the United States Constitution or federal law.  *See* U.S. CONST. Art. III, § 2, cl. 1.  The Constitution specifically enumerates only five criminal activities, of which gambling is not one.  Except for those enumerated criminal activities, all other federal crimes are the product of Congressional statutes. Congress, however, is not free to pass any criminal statute it deems appropriate.  Rather, to pass constitutional muster, all federal criminal statutes must be passed pursuant to one of the specifically enumerated powers in the Constitution.

Under the Commerce Clause, Congress may regulate three broad categories of activity: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from only intrastate activities; and (3) those activities that substantially affect interstate commerce. *United States v. Morrison*, 529 U.S. 598, 609, 120 S.Ct. 1740, 1749, 146 L.Ed. 2d 658 (2000).  In this case, the third category is the category the Court will focus upon.

*A. Fifth Circuit Precedent*

The Court initially notes that the statute has been upheld under the Commerce Clause by the Fifth Circuit.  *See United States v. Harris*, 460 F.2d 1041, 1044 (5th Cir. 1972).  Defendant nevertheless argues that this Court should reconsider the *Harris* decision in light of the United States Supreme Court's recent decisions in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 140 L.E.2d 658 (2000); and *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2588,

183 L. Ed. 2d 450 (2012). Defendant also argues the passage of time and the change in circumstances from the time *Harris* was decided warrant this Court departing from *Harris*. Reconsideration by the District Court of an opinion by the court of appeals, if ever proper, is not proper here. Absent a Fifth Circuit en banc opinion or a Supreme Court case directly on point, this Court should follow precedent. *See United States v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013) ("Under our rule of orderliness, only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent. . . . Such an intervening change in the law must be unequivocal, not a mere "hint" of how the Court might rule in the future."). Neither *Lopez*, nor *Morrison*, are unequivocal as to how the Supreme Court would rule on a challenge to § 1955.

Further, although defendant argues the Fifth Circuit has not directly addressed the constitutionality of the federal gambling statute since the shift in jurisprudence initiated by the *Lopez* decision, such is not the case. In *United States v. Threadgill*, 127 F.3d 357, 372 (5th Cir. 1999), the court held the statute was a valid exercise of Congress's power under the Commerce Clause because the statute at issue does not "cast doubt on Congress' ability to use the Commerce Clause to regulate the charged conduct." While defendant distinguishes *Threadgill*, the case, even if not binding precedent, is persuasive. Further, defendant's reading of *Threadgill* is weakened, if not contradicted, by the Fifth Circuit opinion in *Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192, 208-09 (5th Cir. 2000) (citing *Threadgill* for the holding that illegal gambling could be regulated under the Commerce Clause because it regulates "purely commercial activit[y]"). It is further noted that in *United States v. Hickman*, even the dissenting justices from an equally-divided *en banc* panel speak very directly to the fact that § 1955 is *not*

unconstitutional. 179 F.3d 230, 242 (5th Cir. 1999). Consequently, even though the Fifth Circuit may not have directly addressed § 1955 post *Lopez* and *Morrison*, the court has not issued any opinion casting doubt on the efficacy of the *Harris* decision, and, therefore, this Court must yield to established precedent absent the Supreme Court expressing an unequivocal intention to overrule settled precedent. *See Alcantar*, 733 F.3d at 145-46. Lastly, other circuits that have addressed the issue have come to the conclusion that § 1955 is constitutional after *Lopez* and *Morrison*. *See United States v. Fernandez*, 388 F.3d 1199, 1259 (9th Cir. 2004); *United States v. Riddle*, 249 F.3d 529, 539 (6th Cir. 2001); *United States v. Zizzo*, 120 F.3d 1338, 1350-51 (7th Cir. 1997).

### B. Morrison/Lopez Test

Assuming, for purposes of argument, that the issue is open for consideration, § 1955 remains a constitutional exercise of Congress's Commerce Clause power after *Lopez* and *Morrison*. Defendant cites *Morrison* for the following list of principles the Supreme Court used to determine whether the statute at issue was a proper exercise of Congress's Commerce Clause powers:

(1) Where economic activity substantially affects interstate commerce, even when the activity itself is wholly intrastate, legislation regulating that activity is constitutional. *Morrison*, 529 U.S. at 610.

(2) Where a statute contains an express jurisdictional element that might limit its reach to a discrete set of activities that explicitly connect the activity to interstate commerce, the statute is more likely to be constitutional. *Id.* at 611-12.

(3) Congressional findings regarding the effects of the activity upon interstate

    commerce, while not required, may allow a court to evaluate the legislative judgment that the activity in question substantially affects interstate commerce where no such effect "is visible to the naked eye." *Id.* at 612.

(4) Finally, the connection of the activity to interstate commerce must be direct, rather than attenuated. *Id.*

Where, as here, the activity regulated is commercial in nature, it may not even be necessary to apply the *Morrison* factors since the statute would be valid by virtue of its direct regulation of commercial activity. In *Gonzalez v. Raich*, 545 U.S. 1, 22, 125 S.Ct. 2195, 2209, 162 L.Ed. 2d 1 (2005), involving cultivation of marijuana for solely personal use, the Supreme Court did not apply the *Lopez*/*Morrison* test, and instead required only that congress have a rational basis for believing the proscribed intrastate activity, if not regulated, would undermine the entire regulatory structure.

 Unlike this case, both *Morrison* and *Lopez* dealt with non-commercial criminal statutes "that by [their] terms ha[ve] nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Morrison*, 529 U.S. at 610, 120 S.Ct. At 1749-50 (quoting *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1624). *Lopez* dealt with possession of a firearm in a gun free zone and *Morrison* dealt with gender-based violence. Because the activity regulated under § 1955 is commercial, it does not implicate the primary concern expressed in *Lopez* and *Morrison* by the Supreme Court, i.e., that the federal government would supplant the states' police power. Since this case involves regulation of commercial activity, rather than proscription of criminal activity, the *Lopez*/*Morrison* factors may not be as relevant, and the rational basis review used in *Gonzalez* would be more appropriate.

Even if the Court assumes the *Morrison* factors are relevant and applies them to § 1955, the statute would be constitutional. Regarding the first factor, organized crime has the potential to have a substantial impact on interstate commerce, and illegal gambling is one of the means by which organized crime groups participate in commerce. Even if the impact of illegal gambling as a source of revenue for organized crime has declined, it still has impact. Second, the statute contains limits on its reach so that it only criminalizes larger gambling businesses, which are more likely to have a substantial impact on interstate commerce. To this effect, the statute only criminalizes illegal gambling where five or more persons are involved or which bring in revenue over a certain threshold, which, as the government argues, operates as the "jurisdictional hook." Third, Congress made specific findings regarding gambling and its function as organized crime's primary source of income. Lastly, the effect on interstate commerce is direct, rather than attenuated.

### C. "As Applied" Challenge

Regarding defendant's argument that the statute is unconstitutional as applied to this particular case because the activities in question did not have a substantial effect on interstate commerce, this claim, if cognizable, is not appropriately decided in a pre-trial motion to dismiss. At this point there has not been any factual development of the evidence which would allow an informed determination of the extent of the commercial activities of the alleged gambling conspiracy. Because there are no stipulated facts or trial record, there is no factual support for defendant's argument at the pre-trial stage.

In any case, the law is not settled with regards to whether an "as applied" challenge to a statute passed pursuant to the Commerce Clause is appropriate. It *is* well settled that Congress

may regulate purely local conduct, even where individual instances of such conduct are *de minimis* if "the total incidence of a practice poses a threat to a national market." *Gonzales*, 545 U.S. at 17, 125 S.Ct. at 2205-06 (quoting *Lopez*, 514 U.S. at 558, 115 S.Ct. at 1624). If the aim of the statute were merely to prohibit gambling generally, then it is arguable that the rationale justifying *Gonzalez v. Raich* would fail. *Id.* The broader justification for the statute, as the government points out in its brief, is not to merely regulate gambling, rather Congress's stated intent was to regulate commerce related to organized crime. *See* Gov't Response at 7-10. As such, the "class" of commercial activities regulated are the commercial operations of nation-wide organized crime, and such commercial activities may be validly regulated under the Commerce Clause.

*D. Conclusion*

Defendant Castillo presents a persuasive argument that the utility of § 1955 in combating organized crime has diminished over time, and that both the passage of time and the legalization of gambling in different states raises serious concerns about the appropriateness of § 1955 and whether there is any justification for the federal government to be involved. The decision as to whether § 1955 has outlived its usefulness, however, is a decision for Congress, not the courts. Courts are not empowered to overturn constitutional legislative enactments just because the law is not a good idea or has outlived its purpose. Precedent indicates Congress was within constitutional bounds when it enacted § 1955, and an overwhelming amount of persuasive authority in cases decided post-*Lopez* and its progeny indicates that § 1955 continues to be constitutional. This Court is not willing to go a step further than any other court, including the Supreme Court, by deciding § 1955 is unconstitutional in the face of the cases cited herein.

III.
TEXAS'S RIGHT TO REGULATE GAMBLING

Defendant contends the federal statute violates Texas's right to regulate gambling by punishing gambling activities more severely than similar Texas law. This claim is without merit. A validly enacted federal law trumps state law under the Supremacy Clause of the United States Constitution. U.S. CONST. Art. VI, cl. 2; *see Testa v. Katt*, 330 U.S. 386, 391, 67 S.Ct. 810, 813, 91 L.Ed. 967 (1947) ("[T]he Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, 'any-thing in the Constitution or Laws of any State to the contrary notwithstanding.'").

Defendant cites *Arizona v. United States*, 132 S.Ct. 2492 (2012) and *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) for the proposition that one sovereign may not coopt another sovereign's law and then punish the prohibited conduct more severely. The facts of those two cases are inapposite to the facts of this case. There, the Supreme Court ruled that the state laws were unconstitutional because the federal government had preempted the entire field, not because of some broad rule of federalism. There is no such similar principle of preemption whereby states may preempt the federal government, preventing Congress from legislating pursuant to its enumerated powers. If § 1955 is constitutional pursuant to Congress's Commerce Clause powers–which precedent indicates that it is–Congress is free to enact laws punishing the conduct to whatever extent it feels is appropriate, within the bounds of the Constitution.

Defendant does present a valid argument that it is "unfair" for the federal government to punish as a felony conduct which would only constitute a misdemeanor under state law. That

"equitable" argument, however, does not call into question the constitutionality of § 1955. Defendant's argument certainly could, however, be presented during the sentencing phase of the trial if defendant is in fact convicted.

## IV.
## NEW AUTHORITY

Defendant filed a reply brief arguing the applicability of the recently decided United States Supreme Court case *Bond v. United States*, 134 S.Ct. 2077 (2014).  First, *Bond*, like *Lopez* and *Morrison* concerned non-commercial activity.  Second, *Bond* held that in the absence of clear intent that Congress meant for a statute to reach purely local crimes, any ambiguity within a federal statute should be interpreted so that the statute does not intrude upon the police power of the states.  *Id.* at 2090.  Here, the statute, § 1955, unambiguously proscribes the conduct the defendant is accused of: operating an illegal gambling business.  This case does not present the sort of issue present in *Bond*, where the term "used a chemical weapon" was loosely defined.  *See id.*  "Illegal gambling business" is precisely defined in the body of the statute, and Congress's intent to reach the conduct defendant is accused of is clear and well documented. The *Bond* decision is not applicable.

Further, the parties in *Bond* expressly declined to argue for or against the applicability of the chemical weapons statute on Commerce Clause grounds and the Court declined to address the issue.  *Id*. at 2087.  The *Bond* case raised only an issue of statutory construction.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to dismiss filed by defendant MARIO CASTILLO be

DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation Denying Defendant's Motion to Dismiss to each party by the most efficient means available. The clerk shall also send a copy of the Report and Recommendation to counsel for each of the co-defendants.

IT IS SO RECOMMENDED.

ENTERED this      11th       day of June 2014.


                                                CLINTON E. AVERITTE
                                                UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to this Report and Recommendation. *See* 28 U.S.C. § 636. This case is set for docket call on Monday, June 23, 2014, and trial on Tuesday, June 24, 2014. Therefore, all objections must be filed **on or before Tuesday, June 17, 2014.**

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).